UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRANDI KILBURN, | CASE NO. 12-cv-05414 RJB |
| Plaintiff, | |
| | REPORT AND |
| v. | RECOMMENDATION ON |
| | PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting | |
| Commissioner of the Social Security | Noting Date:  March 15, 2013 |
| Administration,[1] | |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 14, 17, 18).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

Except for a few weeks in 2008, plaintiff never has been gainfully employed because of her severe mental impairments, which include bipolar II disorder. The ALJ failed to take into consideration the opinions of plaintiff's examining psychologist, who concluded that plaintiff needed "support" to maintain any type of continued employment. Although it is unclear exactly what "support" would be necessary, the ALJ failed to fully and fairly develop the record before concluding that plaintiff was capable of performing light work. Also, the ALJ failed to take into consideration plaintiff's reported migraine headaches when evaluating plaintiff's severe impairments. For these reasons, the Court recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

<u>BACKGROUND</u>

Plaintiff, BRANDI NICOLE KILBURN, was born in February, 1990. Plaintiff concedes that the earliest she can receive disability benefits pursuant to this program is January 31, 2008, the month before she turned 18 (ECF No. 14, page 2). Therefore, the relevant period is January 31, 2008 through January 26, 2011, which is the date of the ALJ's decision denying her claim (*id.*; Tr. 20-29).

Plaintiff reportedly was born with fetal alcohol syndrome and was adopted at birth by her grandmother, whom she lived with until age six, when she was removed from the home due to sexual abuse (Tr. 339). She dropped out of school in the middle of her sophomore year of high school because of problems with concentration, but received her GED degree (*id.*). Since she was thirteen, she has been staying with a woman who is not her biological mother, but who has provided a place where she can call home. She has

been treated for mental conditions including anxiety, depression, chronic insomnia, attention deficit hyperactivity disorder ("ADHD") and controlled substance abuse – methamphetamine and marijuana (Tr. 339-40).  Her only reported earnings were in 2008 when she earned $390.29 at Prairie Bar and Grill (Tr. 136, 332), before she was let go because of her inability to do the work and do what people asked her to do (Tr. 40-41).  As of the time of the hearing, she spent most of her time in her house playing with her cats (Tr. 44).

## PROCEDURAL HISTORY

On January 14, 2009, plaintiff protectively filed an application for supplemental security income (SSI) pursuant to Title 16 of the Social Security Act (*see* Tr. 122-35).  Her application was denied initially and on reconsideration (Tr. 71-77, 81-82).  Plaintiff's requested hearing was held before Administrative Law Judge Riley J. Atkins ("the ALJ") on January 6, 2011 (Tr. 20-29).  On January 26, 2011, the ALJ issued a written decision concluding that plaintiff was not disabled pursuant to the Social Security Act (Tr. 20-29).

On May 18, 2009, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981.

On May 11, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (*see* ECF Nos. 3, 4).  Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 17, 2012 (*see* ECF No. 9, 10).

In her Opening Brief, plaintiff raises the following issues: (1) whether or not the ALJ erred when he failed to consider the opinions and evidence indicating that plaintiff

1  cannot perform competitive work activities; (2) whether or not the ALJ properly

2  considered the opinion of examining psychologist Jamie Carter, Ph.D.; and (3) whether

3  or not the ALJ erred when he failed to address plaintiff's migraine headaches at step two

4  or in his Residual Functional Capacity Assessment (ECF No. 14, pages 1-2).

5  <u>STANDARD OF REVIEW</u>

6  Plaintiff bears the burden of proving disability within the meaning of the Social

7  Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

8  the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

9  172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

10  (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

11  disability as the "inability to engage in any substantial gainful activity" due to a physical

12  or mental impairment "which can be expected to result in death or which has lasted, or

13  can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

14  §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

15  impairments are of such severity that plaintiff is unable to do previous work, and cannot,

16  considering the plaintiff's age, education, and work experience, engage in any other

17  substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

18  1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

19  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

20  denial of social security benefits if the ALJ's findings are based on legal error or not

21  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

22  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports

the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's

conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

*Andrews, supra*, 53 F.3d at 1039). In addition, the Court must independently determine

whether or not the Commissioner's decision is "'(1) free of legal error and (2) is

supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

        According to the Ninth Circuit, "[l]ong-standing principles of administrative law

require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

(9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation

omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570

at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

invoke in making its decision") (citations omitted). For example, "the ALJ, not the

1    district court, is required to provide specific reasons for rejecting lay testimony." *Stout,*

2    *supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

3    the context of social security appeals, legal errors committed by the ALJ may be

4    considered harmless where the error is irrelevant to the ultimate disability conclusion

5    when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

6    LEXIS 6570 at \*24-\*26, \*32-\*36, \*45-\*46; *see also* 28 U.S.C. § 2111; *Shinsheki v.*

7    *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

8                                    DISCUSSION

9            The ALJ concluded that plaintiff had the following severe impairments: bipolar II

10   disorder, substance abuse in claimed partial remission, anxiety disorder, and cluster B

11   traits of personality disorder (Tr. 23).  After reviewing the medical and psychological

12   records, the ALJ concluded that plaintiff's residual functional capacity ("RFC") included

13   the ability to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),

14   which is comprised of work activity limited to simple, routine, repetitive work with no

15   public contact, working best alone and not part of a team, and brief social interaction with

16   co-workers and supervisors (Tr. 24).  After consulting with the vocational expert, the ALJ

17   concluded that plaintiff had the functional capacity to work as a produce sorter, paper

18   sorter or routing clerk (Tr. 28).  On this basis, the ALJ denied plaintiff's request for social

19   security benefits.

20

21

22

23

24

**1. Whether or not the ALJ erred when he failed to consider the opinions and evidence indicating that plaintiff cannot perform competitive work activities**

Plaintiff contends that the ALJ erred because he failed to consider opinions and evidence indicating that plaintiff was limited to sheltered work and, therefore, cannot perform competitive work activity (ECF No. 14, pages 7-8). Plaintiff notes that the Commissioner recognizes that work done under special conditions, such as a sheltered workshop, may indicate that an individual is unable to perform substantial gainful activity. 20 CFR § 404.1573 provides, in part, as follows:

>   (b)   . . . if you are unable because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance that is usually given other people duing similar work, this may show that you are not working at the substantial gainful activity level. . . .

>   (c)   If your work is done under special conditions. The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop . . . . If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. . . . However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.

20 CFR § 404.1573.

Therefore, the ALJ is required to determine whether or not special conditions are required in order for plaintiff to be gainfully employed and, if so, if this requirement affects her ability to get a job. *See id.*

Plaintiff argues that the ALJ failed to take her need for special conditions into consideration even though he was presented with functional information indicating that plaintiff only could work with "support" (ECF No. 14, pages 4-6). Plaintiff notes that in

1    April of 2009, plaintiff was examined by Dr. Deborah A. Belshee-Storlie, Ph.D. who

2    diagnosed plaintiff's bipolar II disorder (Tr. 330-38).  Dr. Belshee-Storlie also noted:

3           With continued use of appropriate medications for her
             depression and anxiety; with appropriate treatment of her back pain;
4            with counseling and support for both her mental health as well as
             employment issues, she most likely could secure employment.  With
5            ongoing employment support and an understanding employer she
             may be able to develop her work hardiness and maintain
6            employment.  Without such support, the probability of her securing
             and maintaining gainful employment is much lower.
7

8    (Tr. 336).

9          Dr. Belshee-Storlie did not describe what she meant by "support."  Plaintiff

10   contends that this meant that plaintiff was limited to sheltered work.  Defendant argues

11   that because Dr. Belshee-Storlie did not state explicitly that plaintiff needed a sheltered

12   work situation, the ALJ's conclusion regarding plaintiff's residual functional capacity

13   was supported by substantial evidence (ECF No. 17, pages 10-11).

14         One thing is clear – there is nothing in the ALJ's decision that includes any

15   provision for "support" in plaintiff's proposed work environment.  In the hypothetical

16   questions posed to the vocational expert, Paul K. Morrison, the ALJ asked the expert to

17   assume that plaintiff could, among other things, "engage in brief, normal social

18   interactions with co-workers and supervisors" (Tr. 55). The ALJ's decision provides no

19   other analysis regarding what "support," if any, would be required.  In the absence of any

20   analysis, this Court must conclude that the ALJ rejected Dr. Belshee-Storlie's evaluation.

21   He did so without providing specific and legitimate reasons for rejecting this opinion.

22

23

24

1    The ALJ must provide "clear and convincing" reasons for rejecting the

2    uncontradicted opinion of either a treating or examining physician or psychologist.

3    *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

4    1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

5    a treating or examining physician's opinion is contradicted, that opinion "can only be

6    rejected for specific and legitimate reasons that are supported by substantial evidence in

7    the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

8    1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

9    thorough summary of the facts and conflicting clinical evidence, stating his interpretation

10   thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.

11   Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ "may not reject 'significant

12   probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th

13   Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting

14   Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision

15   must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

16       The medical evidence of plaintiff's mental impairments in the record is significant

17   probative evidence that the ALJ should not have rejected without discussion. *See Vincent,

18   supra*, 739 F.2d at 1394-95. Here, the ALJ failed to make any reference to Dr. Belshee-

19   Storlie's recommendation regarding "support" in her work environment and it is unclear

20   exactly what "support" plaintiff would require.

21       Also, the ALJ "has an independent 'duty to fully and fairly develop the record.'"

22   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80

F.3d 1273, 1288 (9th Cir. 1996)). An ALJ's duty to develop the record especially is "important when plaintiff suffers from a mental impairment." *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The regulations additionally make clear that the Commissioner should consider what "special conditions" may be required before determining if plaintiff is capable of substantial gainful activity. *See* 20 C.F.R. § 404.1573(b), (c). And the ALJ's failure to analyze what special conditions are appropriate to provide "support" for plaintiff in a work environment makes his conclusions regarding plaintiff's RFC unsupportable. The special conditions required may be, as plaintiff argues, a sheltered work shop. There may be some other form of "support," such as a need for an "understanding employer," as opined by Dr. Belshee-Storlie (*see* Tr. 336). But without determining explicitly what "support" is necessary, it is impossible to determine if plaintiff is capable of gainful employment.

In addition to Dr. Belshee-Storlie's evaluation, the ALJ also indicated that he gave "great weight" to the opinion of Dr. Jamie E. Carter, Ph.D. (Tr. 26) who provided a psychological evaluation for the Washington State Department of Social and Health Services on May 25, 2010 (Tr. 339-42). Like Dr. Belsee-Storlie, Dr. Carter came to the conclusion that he had concerns regarding plaintiff's ability to adapt to a work setting because of her unstable moods and problems with attention and hyperactivity (Tr. 341-42). He concluded that "she may benefit from services through DVR to assist her in finding a job setting where she would be more likely to have success and to provide a job coach for her" (Tr. 342.) Again, this indicates that plaintiff would require special assistance in order to hold a job and the ALJ provided no analysis regarding Dr. Carter's

conclusion in that regard.  Instead, the ALJ ignored that statement and concluded that plaintiff could tolerate the pressures and expectations of a normal work setting (*see* Tr. 26).

Finally, the ALJ also reviewed the medical opinions of Dr. Margaret M. Lin, M.D. who was plaintiff's treating physician.  Dr. Lin concluded that plaintiff had significant struggles with the ability to function as an adult, with ongoing mood swings and needs for mental health follow-ups (Tr. 272).  This conclusion is consistent with the conclusions of Dr. Belsee-Storlie and Dr. Carter and, similarly, was not addressed in the ALJ's decision.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

Because the ALJ failed to provide specific and legitimate reasons for rejecting the conclusions of treating and examining physicians, this Court recommends that the ALJ's decision be reversed for further consideration.  Specifically, the ALJ should consider if

1   special conditions are required to provide assistance to plaintiff to perform work.

2   Examples of such special conditions are set forth in 20 C.F.R. § 404.1573(c) and include,

3   among other things, receiving special assistance from other employees to perform work,

4   being allowed to work irregular hours, being permitted to work at a lower standard of

5   productivity or efficiency than others.  This likely requires professional judgment to

6   evaluate the evidence in each case.  *See* Commissioner's Program Operations Manual

7   System ("POMS") DI 25020.010, *Mental Limitations*.

        **2.  Whether or not the ALJ properly considered the opinion of examining psychologist Jamie Carter, Ph.D.**

10          In addition to concluding that plaintiff required a job coach, Dr. Carter found that

11   plaintiff would have moderate limitations (causing significant interference) in cognitive

12   functioning including learning new tasks (Tr. 414) and would have marked limitations in

13   her ability to respond appropriately to and tolerate the pressures and expectations of a

14   normal work setting (*id.*).  She explicitly indicated the basis for her rating was her

15   conclusion that plaintiff was "unlikely to tolerate work stress" (*id.*).  Although the ALJ

16   indicated that he gave Dr. Carter's opinion "great weight" (Tr. 26), he did not include any

17   of these limitations in his conclusions regarding plaintiff's RFC (Tr. 24).  Nor did the

18   ALJ provide any explanation as to why he rejected these limitations.  On remand, the

19   ALJ should consider and evaluate <u>all</u> of the limitations indicated by Dr. Carter and others.

20   *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20 (a RFC assessment by the ALJ "must always

21   consider and address medical source opinions. If the RFC assessment conflicts with an

opinion from a medical source, the adjudicator must explain why the opinion was not

adopted").

### 3. Whether or not the ALJ erred when he failed to address plaintiff's migraine headaches at step two or in his Residual Functional Capacity Assessment

The medical record is replete with references to plaintiff's migraine headaches

(*see, e.g.,* Tr. 155, 284, 285, 409).  She reported she would have these headaches three or

four times per week and that they lasted twenty minutes to a couple of hours (Tr. 284).

She would become sensitive to light, noise, movement, and experience nausea and

vomiting (Tr. 285).  Despite these references in plaintiff's medical record, there was no

reference in the ALJ's written opinion to plaintiff's migraine headaches either at step two

or when evaluating plaintiff's RFC.

Step-two of the administration's evaluation process requires the ALJ to determine

whether or not the claimant "has a medically severe impairment or combination of

impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge

"must consider the combined effect of all of the claimant's impairments on her ability to

function, without regard to whether each alone was sufficiently severe." *Smolen, supra*,

80 F.3d at 1290 (citations omitted).  The step-two analysis is "a *de minimis* screening

device to dispose of groundless claims." *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v.*

*Yuckert*, 482 U.S. 137, 153-54 (1987)).  Here, the ALJ's failure to even mention

plaintiff's migraine headaches indicates that this medical evidence was not considered for

purposes of reaching his conclusions regarding plaintiff's severe impairments.  On remand, the ALJ should provide this analysis, as well.

Defendant argues that the ALJ's failure to consider migraine headaches in his decision is harmless error because the ALJ found other severe impairments (ECF No. 17, page 6).  A finding of severe impairment is not a "win" or "lose" situation.  The finding of severe impairments is only one step in an evaluation that attempts to determine whether or not plaintiff is capable of "substantial gainful activity existing in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  If the ALJ fails to evaluate an impairment, then this necessarily impacts his or her evaluation of plaintiff's alleged disability.  Therefore, the ALJ's error is not harmless.

Finally, in certain circumstances, if an ALJ fails to indicate that a plaintiff suffers from a severe impairment but addresses this limitation when evaluating plaintiff's RFC, then, potentially, the error is harmless.  *Lewis v. Astrue,* 489 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 583 (9th Cir. 2004).  Here, the ALJ did not take into consideration any functional limitations resulting from plaintiff's possible migraine headaches.  Therefore, on remand, the ALJ should either decide explicitly that these migraine headaches are not a severe impairment or assess what limitations, if any, should be included in plaintiff's RFC.  Here, the failure of the ALJ to do either requires reversal.

//

//

//

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 15**,** 2013, as noted in the caption.

Dated this 21st day of February, 2013.


J. Richard Creatura
United States Magistrate Judge